UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MAYA BALAKRISHNAN                                CIVIL ACTION

V.                                               NO. 08-4315

THE BOARD OF SUPERVISORS OF LOUISIANA            SECTION "F"
STATE UNIVERSITY AND AGRICULTURAL AND
MECHANICAL COLLEGE, ET AL.

ORDER AND REASONS

Before the Court are the defendants' Motions to Dismiss Pursuant to Rule 12(b)(6) and 12(b)(1). For the reasons that follow, the motions are DENIED.

**Background**

The plaintiff, a female of Indian national origin, was employed in a two year psychiatry residency program at LSU Medical School after her training and psychiatry residency. She was scheduled to complete the program on July 30, 2004. However, on July 14, 2004, the school requested that she submit to a fitness for duty evaluation, allegedly because she was suffering from depression. This was followed up with a recommendation that she attend a residential treatment evaluation facility, which she asserts was required for her to receive her diploma. At her exit

interview, plaintiff was confronted with two accusations: that she participated in an escort service and that she falsified a licensure test score. Thereafter, she was determined to be "unfit for duty." LSU Medical School suggested that she participate in a two-week outpatient program at DePaul/Tulane; upon completion, she claims a psychiatrist at DePaul/Tulane determined she was fit for work. However, in a letter dated December 20, 2004, LSU Medical School informed her that they did not intend to certify her satisfactory completion of the program because she had not met the ethical and profession aspects of the program.

In January 2005, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, asserting that LSU had discriminated against her based on race/national origin and/or sex by withholding her diploma and certification. Also in January 2005, plaintiff filed suit in federal court, which was voluntarily dismissed without prejudice, and in state court, in which she claimed that LSU discriminated against her and defamed her. After delays due to procedural issues, in October 2007, LSU obtained a court order staying all discovery in that case, including plaintiff's personnel file and records.

On March 11, 2008, the state court sustained LSU's Exception for Lack of Subject Matter Jurisdiction as to the claims under 42 U.S.C. sections 1981 and 1983 and Exception for No Cause of Action as to the claim of defamation. However, the judge gave the

plaintiff 30 days to amend her complaint to cure the deficiencies raised by the Exception of No Cause of Action as to her defamation claim. Plaintiff filed an amended petition on April 10, 2008.

On April 17, 2008, plaintiff filed a charge with the Equal Employment Opportunity Commission alleging that LSU unlawfully retaliated against her for previously engaging in protected activity under the Civil Rights Act. She claimed that LSU's refusal to provide her with her personnel file and record was an act of retaliation for previously filing an EEOC charge in January 2005. In August 2008, plaintiff filed suit against The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, which operates the Louisiana State University School of Medicine New Orleans, asserting unlawful retaliation for her protected activity in violation of Title VII.

After filing the 2008 EEOC charge, plaintiff asserts that LSU still again retaliated against her by refusing to respond to inquiries from the Federal Credentials Verification Service/Federation of State Medical Boards of the U.S., Inc. about verification concerning plaintiff's postgraduate training and work at LSU. Plaintiff added this claim of unlawful retaliation to the present action in December 2008. In her amended complaint, plaintiff also added several LSU officials, named solely in their official capacity, and from whom plaintiff claims she is only seeking prospective injunctive relief. Plaintiff names William

Scott Griffies, Howard Osofsky, Larry Hollier, Steve Nelson, Eric Conrad, John Lombardi, and James Roy, whom she asserts discriminated against her based on her race in refusing to provide her with her diploma and certification of completion of the LSU psychiatry residence program.

LSU moves to dismiss the amended complaint under Rules 12(b)(1) and 12(b)(6).[1]  LSU asserts that plaintiff cannot sustain an action under Title VII because LSU was not plaintiff's employer at the time of the alleged incident, that she did not engage in protected activity, and that the alleged retaliatory conduct is not actionable under Title VII.  Additionally, LSU asserts plaintiff's action has prescribed.

Griffies, Osofsky, Hollier, Nelson, Conrad, Lombardi, and Roy ("LSU Officials") also move to dismiss plaintiff's amended complaint under Rules 12(b)(1) and 12(b)(6).  They assert that the dismissal of the plaintiff's action in state court bars the claims against them.  They claim that they are entitled to immunity under the Eleventh Amendment to the United States Constitution.  They contend that plaintiff does not state in her complaint that the

---

[1] LSU had previously filed a Motion to Dismiss and Special Motion to Strike the original complaint in January 2009. LSU focused that entire motion on supposed claims under 42 U.S.C. § 1983 and § 1981 and defamation. However, plaintiff did not assert these claims against LSU in her complaint or amended complaint. Plaintiff's claims against LSU in her original and amended complaint are solely for retaliation under Title VII. Therefore, LSU's first motion to dismiss and special motion to strike is denied.

actions of the LSU Officials were intentional or were made with deliberate indifference to plaintiff's constitutional requirements, which is an essential and necessary element of a § 1981 claim. They argue that plaintiff cannot bring a § 1981 action because she did not have an employment contract with the LSU Officials and that §1983 provides the exclusive remedy for deprivations of constitutional rights under color of state law by government officials. They also assert that Title VII provides the exclusive remedy for employment discrimination on the basis of race. They submit that plaintiff's claim does not state a case or controversy and cannot be heard by this Court. Finally, they add that plaintiff's claims have prescribed.

Plaintiff responds to LSU's contentions by asserting that retaliation actions under Title VII may be brought by former employees, and the retaliation need not be an adverse employment action. Additionally, plaintiff notes that Title VII provides that an EEOC charge must be filed within 300 days, and therefore, her claim has not prescribed. To avoid the effects of the state court judgment, she asserts that the state court judgment does not bar her claim under res judicata because the state court case was between different parties and was not a decision on the merits. She points out that in her complaint she alleges that the actions of the LSU Officials were intentional. Section 1981, she says, provides a right of action independent of Title VII and § 1983.

I.

A. Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction and rule 12(h)(3) requires that the Court dismiss an action if it determines that subject-matter jurisdiction is lacking. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998). In determining whether jurisdiction exists, the Court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. Clark v. Tarrant County, 798 F.2d 736, 741 (5th Cir. 1986). Federal courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether a claim "arises under" federal law is determined by examining the allegations of the well-pleaded complaint. See Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986). The federal question must appear on the face of the complaint. See Tores v. Southern Peru Copper Corp., 113 F.3d 540, 542 (5th Cir. 1997) (citations omitted).

A motion to dismiss under Rule 12(b)(1) requires that the

Court only examine whether it has jurisdiction to hear the case; it does not call for a judgment on the merits of the claim. Bell v. Hood, 327 U.S. 678, 682 (1946). "Jurisdiction, therefore, is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." Id. Dismissal for lack of subject-matter jurisdiction "is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy." Steel Company v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998) (internal quotations omitted).

## B. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)). To state a claim upon which relief can be granted, Rule 8(b) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Erickson v.

7

Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" See Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Twombly, 550 U.S. at 569). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (quotation marks, citations, and footnote omitted).

II.

A. LSU's Motion to Dismiss

Section 704(a) of Title VII of the Civil Rights Act of 1964 makes it unlawful "'for an employer to discriminate against any of his employees' . . . who have . . . availed themselves of Title VII's protections," including filing a charge with the EEOC. Robinson v. Shell Oil Co., 519 U.S. 337, 339 (1997) (quoting 42 U.S.C. § 2000e-3(a)). To establish a prima facie case of

8

retaliation, a plaintiff must show "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." Carthon v. Johnson Controls Inc., 100 F. App'x 993, 997 (5th Cir. 2004).

Plaintiff asserts that LSU obtained a court order and refused to provide her with her personnel file and records in retaliation for her filing a complaint with the EEOC. At the time LSU obtained the court order limiting plaintiff's access to her files, plaintiff was no longer an employee with LSU. LSU argues this prevents plaintiff from bringing a retaliation claim. This Court disagrees. The Supreme Court held, without restriction, that "former employees are included within § 704(a)'s coverage." Robinson, 519 U.S. at 346.[2] This is specifically the type of situation contemplated by the Robinson court.

Plaintiff engaged in protected activity under Title VII when she filed an EEOC complaint, fulfilling the first requirement of a prima facie case of retaliation. Plaintiff also pleads that she

---

[2] LSU mistakenly states that the Court in Robinson limited its opinion to a situation in which a party alleges retaliatory discharge. This is not the case. The Court notes that it was examining the meaning of the term "employees" as used in § 704(a) to determine whether it "includes former employees, such that petitioner may bring suit against his former employer for postemployment actions allegedly taken in retaliation for petitioner's having filed a charge with the" EEOC. Robinson, 519 U.S. at 339. In fact, the former employee was alleging retaliation in the form of a negative reference for a separate job for which he was applying. Id.

9

suffered an adverse employment action.  This does not have to be an "ultimate employment decision" as argued by LSU.  On the contrary, the Supreme Court has again addressed this issue directly: "The scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006).  The Court explicitly "reject[ed] the standards applied in the Courts of Appeals that have treated the anti-retaliation provisions as forbidding the same conduct prohibited by the anti-discrimination provision and that have limited actionable retaliation to so-called 'ultimate employment decisions.'" Id. The Court went on to state that actionable retaliation includes actions which "a reasonable employee would have found . . . materially adverse, []which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. at 68.

Without commenting on the merits, the Court finds that the plaintiff has sufficiently pleaded an action that fulfills this test.  Withholding her personnel records and file and refusing to respond to inquiries from the Federal Credentials Verification Service/Federal of State Medical Boards of the U.S., Inc. meets the threshold pleading requirements.

Finally, plaintiff has pleaded a causal connection between her protected action and the adverse action.  The withholding of her

10

personnel file was done as part of the state court case in which plaintiff alleged employment discrimination.  The discrimination alleged in the EEOC charge (the alleged protected activity in this case) was the basis of that state court suit.  While more than two years elapsed between the filing of the EEOC charge and the court order restricting the discovery of plaintiff's file, the passage of time is unrelated to causation.  See Ajao v. Bed Bath and Beyond, Inc., 265 F. App'x 258 , 265 (5th Cir. 2008).  Because this is a motion to dismiss, the plaintiff need only plead sufficient facts to make a finding of causation plausible.  She has done so.

Because plaintiff has sufficiently pleaded a prima facie case of retaliation, LSU's Motion to Dismiss is denied.[3]

B. LSU Officials' Motion to Dimiss

*1. Eleventh Amendment Immunity*

The Eleventh Amendment to the United States Constitution "bars suits in federal court by a citizen of a state against his own state or against a state agency or department." Hughes v. Savell,

---

[3] LSU also argues that plaintiff's claim has prescribed, arguing that this Court apply the statute of limitations for 42 U.S.C. § 1983 or from the Louisiana Civil Code.  Title VII does place a time limit on the filing of EEOC complaints and the subsequent filing of federal actions.  An EEOC complaint must be filed within 300 days of the alleged discriminatory or retaliatory action in Louisiana. Janmeja v. Board of Supervisors of Louisiana State University, 96 F. App'x 212, 213-14 (5th Cir. 2004).  A plaintiff has 90 days after the EEOC administrative process has ended to file suit. Crawford v. Western Electric Co., Inc., 614 F.2d 1300, 1307 (5th Cir. 1980).

902 F.2d 376, 377 (5th Cir. 1990). However, Ex Parte Young creates an exception to Eleventh Amendment immunity in cases against government officials acting in their official capacity for prospective injunctive relief. 209 U.S. 123 (1908). To determine whether this exception applies, the Court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 645 (2002). The Court need not consider the merits of the claim so long as the complaint contains an allegation of an ongoing violation of federal law. See id.

Here, the plaintiff has met the pleading requirements to satisfy the requirements of the immunity exception of Ex Parte Young. She has pleaded an ongoing violation of federal law, namely that the LSU Officials are wrongfully withholding her certification and diploma based on racial discrimination, and she seeks solely prospective relief, specifically the issuance of her certification and diploma. Defendants' argument that plaintiff seeks retrospective relief or that the injunctive relief she seeks is the functional equivalent of money damages is without merit.

*2. Res Judicata*

Louisiana Revised Statute section 13:4231 provides that "a valid and final judgment is conclusive between the same parties, except on appeal or other direct review." Under Louisiana law, for

a case to be barred under the doctrine of res judicata, a valid and final judgment must exist. "[A] valid judgment is one rendered by a court with jurisdiction over both the subject matter and the parties after proper notice was given." Wooley v. State Farm Fire and Casualty Ins. Co., 04-882, *36 (La. 1/19/05); 893 So. 2d 746, 771. Here, the state court judge dismissed the claims against LSU under 42 U.S.C. § 1981 due to lack of subject matter jurisdiction. Therefore, this case is not barred by res judicata because there exists no previous valid judgment.

*3. Title VII and § 1981*

Defendants claim that Title VII creates the exclusive legal remedy for employment discrimination suits. However, the Supreme Court has held that "the remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and independent." Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 461 (1975). The Court noted that the two provisions "augment each other and are not mutually exclusive." Id.; see also CBOCS West, Inc. v. Humphries, 128 S. Ct. 1951, 1960 (2008) (noting the "necessary overlap between Title VII and § 1981"). The Fifth Circuit has also noted, in a suit against the Board of Supervisors of Louisiana State University Agricultural and Mechanical College, that Title VII is not the exclusive remedy for race based employment discrimination. Robertson v. Board of Supervisors of Louisiana State University

13

Agricultural and Mechanical College, 273 F.3d 1108, 2001 WL 1131950, *1 (5th Cir. Sept. 20, 2001) (per curiam); see also Hernandez v. Hill Country Telephone Cooperative, 849 F.2d 139, 142-43 (5th Cir. 1988) (stating that Fifth Circuit precedent "does not stand for the proposition, nor could it properly do so, that a claimant alleging racial discrimination in an employment setting is limited to recovery under Title VII").

Therefore, plaintiff need not have filed suit under Title VII; she can properly seek relief under § 1981. Defendants additionally assert plaintiff's § 1981 claims must fail because she did not have an employment contract with LSU. Plaintiff asserts in her complaint that she did have an employment contract; this is, again, sufficient to defeat a motion to dismiss.

*4. Case or Controversy Requirement*

Defendants assert that plaintiff is seeking injunctive relief for a "conjectural, hypothetical threat of future" harm, which fails to satisfy the case or controversy requirement of Article III. Defendants miss the point. The plaintiff does not claim that the conduct of the officials is likely to recur, but rather that withholding of her certification is ongoing.

*5. Prescription*

Plaintiff's claims have not prescribed. Section 1981 was amended in 1991 to include in the definition of "make and enforce contracts" the "performance, modification, and termination of

14

contracts, and the enjoyment of all benefits privileges, terms, and conditions of the contractual relationship." Pub. L. No. 102-166, 105 Stat. 1071 (codified as amended at 42 U.S.C. § 1981). The Supreme Court held that a cause of action made possible by the 1991 amendments to section 1981 are governed by the four-year statute of limitations articulated in 28 U.S.C. § 1658. <u>Jones v. R.R. Donnelley & Sons Co.</u>, 541 U.S. 369, 382-83 (2004); see also <u>Fonteneaux v. Shell Oil Co.</u>, 289 F. App'x 695, 698-99 (5th Cir. 2008). The Court noted that the 1991 Act overturned the Court's decision in <u>Patterson v. McLean Credit Union</u>, which held that "racial harassment relating to the conditions of employment is <u>not actionable</u> under § 1981." 541 U.S. at 383 (quoting <u>Patterson</u>, 491 U.S. 164, 171 (1989)).

This is exactly the conduct of which plaintiff complains to this Court. She asserts that defendants discriminated against her on the basis of race and failed to uphold their contractual obligations to provide her with a certification of completion of the psychiatry program. Because this cause of action was "made possible" by the 1991 revisions to § 1981, the four year statute of limitations applies. Plaintiff added the LSU Officials as defendants on December 19, 2008, just shy of four years after the December 20, 2004 letter informing her that LSU would not be issuing her certification of completion.

Accordingly, the defendants' motions are DENIED.[4]

New Orleans, Louisiana, July 20, 2009.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[4] The LSU Officials also allege various other unwarranted bases for dismissal. They state that plaintiff seeks an award of punitive damages in her complaint. No such request is made. Defendants claim that "nowhere in the complaint" does plaintiff allege that university officials acted "intentionally" to violate plaintiff's constitutional rights. Plaintiff points to no less than eight paragraphs in which she specifically alleges intentional conduct that violated her rights. Defendants are cautioned to use reasonable diligence in their representations to this Court and to become at the least casually acquainted with 28 U.S.C. § 1927.